# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER L. WILLIAMSON,**<br>**Plaintiff,**<br>v.<br>**NANCY A. BERRYHILL,**<br>**Acting Commissioner of Social Security**<br>**Defendant.** | **NO. EDCV 16-2245-KS**<br><br>**MEMORANDUM OPINION AND ORDER** |

## INTRODUCTION

Plaintiff Christopher Lamont Williamson ("Plaintiff")[1] filed a Complaint on October 26, 2016, seeking review of a decision of the Commission of Security denying Plaintiff's application for Supplemental Security Income ("SSI") disability benefits. (Dkt. No. 1.) All parties have consented, pursuant to 28 U.S.C. § 636 (c), to proceed before the undersigned United Sates Magistrate Judge. (Dkt. Nos. 10, 12, 13.) On July 31, 2017, the parties filed a "Joint Stipulation" ("Joint Stip.") (Dkt. No. 23), in which Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits (Joint Stip. at 8). The Commissioner

---

[1] Plaintiff was 39 years old at the time he filed his application for disability benefits, and considered a younger individual (age 18-49) under agency regulations. (20 CFR 416.963; *see also* AR 17.)

1

requests that the decision be affirmed or, in the alternative, that the case be remanded for further administrative proceedings. (Joint Stip. at 8-9.) The Court has taken the matter under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On September 18, 2012, Plaintiff filed an application for SSI alleging disability beginning on August 20, 2011. (Administrative Record ("AR") 172-78.) The application was initially denied on January 25, 2013 (AR 81), and upon reconsideration on August 7, 2013. (AR 87.) On September 27, 2013, Plaintiff filed a written request for hearing before an Administrative Law Judge ("ALJ"). (AR 95.) ALJ Troy Silva held a hearing on July 18, 2014 in San Bernardino, California. (AR 23-36.) Plaintiff, represented by counsel, testified at the 2014 hearing. (AR 26-36.) ALJ Silva continued the 2014 hearing without reaching a decision in order to permit Plaintiff to provide additional medical records for the previous year including records or a "recent surgery." (AR 35.)

ALJ Silva resumed the hearing on April 17, 2015. (AR 37-54.) At the 2015 hearing, Plaintiff again appeared with counsel and testified. (AR. 40-49.) Vocational Expert ("VE") Sandra Fioretti also testified at the 2015 hearing. (AR 49-52.) On May 15, 2015, the ALJ issued an Unfavorable Decision. (AR 6-18.) Plaintiff then filed a Request for Review of Hearing Decision on June 24, 2015. (AR 5.) The Appeals Council denied review on September 8, 2016. (AR 1-3.) This timely action followed.

**SUMMARY OF ADMINISTRATIVE DECISION**

Applying the five step sequential evaluation process outlined in 20 CFR § 416.920(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since September 18, 2012, the alleged disability onset date. (AR 11.) The ALJ found Plaintiff had

severe impairments consisting of: morbid obesity; osteoarthritis of the hip; and right knee osteoarthritis, status-post surgery. (*Id*.)[2] The agency determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Par 404, Subpart P. The ALJ determined that Plaintiff had the residual functional capacity ("RFC")

> to perform less than the full range of light work . . . the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk for 2 hours in an 8-hour workday, for 30 minutes at a time—he would then need to sit for 15 minutes before standing and/or walking again. The claimant can sit without limitation . . . push and pull without limitations, except as indicated with lifting and carrying. He can occasionally, climb ramps, rarely climb stairs and never climb ladders ropes or scaffolds. Moreover, the claimant can only occasionally balance and stoop, and can never kneel, crouch and crawl. The claimant must also avoid concentrated exposure to hazards and could not work at unprotected heights.

(AR 12.) The ALJ concluded that Plaintiff is unable to perform his past relevant work as a store laborer and precast molder as actually or generally performed. (AR 16-17.)[3] At the last step of the evaluation process, the ALJ determined, after taking into account Plaintiff's age, education, work experience and RFC, that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (AR 17.) The ALJ thus concluded that Plaintiff has not been under a disability since September 18, 2012, the date he filed his application for disability benefits. (*Id*.)

---

[2] Plaintiff also stated that he cannot work because of hypertension. (AR 11.) While the record showed that Plaintiff had sought treatment for hypertension before and after filing his application for benefits, because "the record shows only conservative and routine medication for his condition," and there is no objective evidence showing that this condition contributed "to specific an ongoing symptoms, the ALJ concluded that Plaintiff's hypertension "does not cause more than a minimal effect on his ability to perform basic work activities and, on that basis, is 'non-severe'." (AR 11-12.)

[3] Based on the Dictionary of Occupational Titles ("DOT"), store laborer (DOT 922.687-058) is considered medium, unskilled work and precast molder (DOT 579.685-042) is considered heavy, semi-skilled work. (AR 16.).

3

# STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error,

'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

### I. Disputed Issue

Plaintiff raises a single disputed issue: whether the ALJ fully and fairly developed the record. (Joint Stip. at 2.)

### II. The Parties' Positions

Plaintiff argues that the ALJ erred by failing to fully develop the record with respect to x-rays of his left hip and right knee performed in the year preceding the continuation of the administrative hearing before ALJ Silva. (Joint Stip. at 2.) Specifically, Plaintiff complains that "the ALJ decided to close the record at the conclusion of the hearing" despite being informed by Plaintiff's attorney that "the medical record was still missing any documentation of Plaintiff's right knee surgery and his subsequent post-surgical progress." (Joint Stip. at 3.) Plaintiff had testified at the July 18, 2014 hearing that he had been recently referred for a left hip replacement surgery by his treating orthopedic surgeon, Dr. Dhalla and that Dr. Dhalla had prescribed Plaintiff a cane. (AR 40-42.) Plaintiff argues that the "record contains very little from [Dr. Dhalla], [a] crucial treatment source" and notes that the six pages of records from Dr. Dhalla "do not include any operative or post-operative notes from Plaintiff's right knee surgery, nor do they contain any actual treatment records from 2013, 2014, or 2015." (Joint Stip. at 4 (*citing* AR 270-272; 403-405).) Plaintiff maintains that if the ALJ had "properly discharged his duty to fully and fairly develop the record, the additional records may well have resulted in a different outcome in this case." (Joint Stip. at 5.)

5

Defendant concedes that the "ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." (Joint Stip. at 6 (*citing Brown v. Heckler*, 713 F.2d 441, 442 (9th Cir. 1983).) However, Defendant points out that the ALJ's duty is only triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Id.* (citing *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Defendant also notes that under Social Security Regulations, Plaintiff bears the burden to establish disability. *Id.* (citing, *inter alia*, 42 U.S.C. § 423(d)(5)(A)).

### III. The ALJ Did Not Err and His Opinion is Supported by Substantial Evidence

Plaintiff fails to establish that the ALJ committed legal error. First, as noted, Plaintiff bears the burden to establish a right to benefits and regulations expressly provide that a claimant "must furnish medical and other evidence that [the agency] can use to reach conclusions about your medical impairment(s)" and the claimant "must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled." *See* 20 C.F.R. § 4-4.1512(a), (c); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (claimant carries burden to present "complete and detailed objective medical reports," regarding his condition from medical professionals).

The ALJ fulfilled his obligation to develop the record by affording Plaintiff an opportunity to obtain additional medical records after the first hearing held on July 18, 2014. (*See* AR 35.) Plaintiff testified at the 2014 hearing that he had an x-ray done about two weeks before the hearing and within the last year had "had like four [x-rays] done on like my hip, and my knee." (AR 34-35.) He stated that his physician had given him "the x-ray on CD." (*Id.* at 35.) Consequently, in response to Plaintiff's attorney's argument that review of imaging the ALJ and treating records for Plaintiffs' recent knee surgery "could result in a listing," the ALJ stated: "we don't have any medical records in the last year, and [Plaintiff]

6

has had recent surgery. So let's continue this case in order to get those records, and have a medical expert look at those to see whether or not he equals or meets a listing based on that evidence. I think that's a reasonable argument, and it's worth exploring." (AR 35.)

The ALJ then continued the hearing some nine months to April 17, 2015. (AR at 37-54.) At the commencement of the 2015 hearing, additional exhibits were admitted into evidence and Plaintiff's counsel had no objections. (AR 26.) However, when the ALJ asked whether "we have anything showing what happened since the [hip] surgery," Plaintiff's counsel responded "No, the surgery actually isn't in the record." (AR 44.) Accordingly, Plaintiff had ample opportunity to obtain and submit medical records including any MRI images, the CD of Plaintiff's x-ray, records from his right knee surgery on June 3, 2014, any prescription for assistive devices such a cane or walker, and any other medical records that he deemed relevant and necessary to carry his burden to establish disability. He did not do so.

Notably, Plaintiff was represented by the same attorney, Ryan Fox, at both hearings before ALJ Silva. (*See* AR 23, 37.) It is unclear why Plaintiff's counsel did not or could not obtain the medical records that counsel argued were necessary to assess whether a listing might apply. When the ALJ asked at the 2015 hearing why there were no records of Plaintiff's June 2014 hip surgery, Plaintiff's attorney replied, "Yeah, we requested updated records from Arlanza, and they gave us records from [2009]" and Plaintiff objected, "He ain't my doctor no more." (AR 45.)

The ALJ's obligation to fully develop the record is triggered when the record contains ambiguous evidence. *Mayes*, 276 F.3d at 459-60 ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." (*citing Tonapetyan*, 242 F.3d at 1150)). Here, Plaintiff does not point to any record evidence that is ambiguous, only that the record

is inadequate to determine whether Plaintiff might be subject to a listing that would render him presumptively disabled. (AR 34.) Plaintiff argues his "record is almost entirely devoid of treatment records from treating physician Dr. Raja Dhalla." (Joint Stip. at 4.) However, the ALJ continued the hearing for nine months precisely to allow Plaintiff to obtain and submit these missing records. (*See* AR 35-36.) If the record is "blatantly incomplete," as Plaintiff contends (Joint Stip. at 6), then that failure rests on Plaintiff, who had both the burden of establishing disability and the opportunity to present the necessary records to the ALJ.

Finally, even if the ALJ erred in failing to obtain Plaintiff's medical records from Dr. Dhalla in the nine months between the 2014 and 2015 administrative hearings, any error was inconsequential to the ultimate nondisability determination. *See Brown-Hunter*, 806 F.3d at 492 (court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned'"). Specifically, the ALJ noted that despite Plaintiff's allegedly disabling conditions, Plaintiff reported to Dr. Dhalla at a 2012 examination that he was self-employed and liked to exercise and lift weights. (AR 14, 272.) Plaintiff also testified that he thought he could work if he had a job sitting down, and the ALJ's RFC determination is consistent with Plaintiff's testimony about his own ability to work. (AR 35-36.)

For the above reasons, the Court finds that the ALJ satisfied his duty to develop the record and articulated legally sufficient reasons for denying disability benefits, reasons that are supported by substantial evidence in the record. Accordingly, this Court will not disturb ALJ's decision. *See Batson v. Comm'r of Soc. Security Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("when evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ.") (internal citation omitted).

**CONCLUSION**

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: August 18, 2017

/s/ Karen L. Stevenson
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE